CARBOLOY COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 29366.   Promulgated September 18, 1952.

*John P. Lipscomb, Jr., Esq.,* and *C. Rudolf Peterson, Esq.,* for the
petitioner.

*E. M. Woolf, Esq.,* for the respondent.

### OPINION.

OPPER, *Judge:* A deficiency in excess profits taxes for the calendar
year 1943 determined in the amount of $13,985.79 constitutes the occa-
sion for the present controversy.   An overpayment is also claimed.
All of the facts have been stipulated and are hereby found accordingly.

The sole issue is the correct amount of petitioner's opening inventory
on the first day of the tax year.   Prior thereto petitioner had been
one of a number of corporations participating in a consolidated return.
In 1943, however, it returned to the separate return method, and in
computing its opening inventory for that year it added back $61,008
of previously excluded intercompany profit.   Respondent accepted
this figure as correct and continues to maintain that position.   Peti-
tioner, however, now contends that a total of $331,571 of intercompany
profits or $270,563 in excess of the amount originally included should
be added to its opening inventory.   The larger amount constitutes
the intercompany profits in petitioner's inventory at the end of the
consolidated return period.   The smaller figure is that which was,
pursuant to accepted procedure,[1] excluded for consolidated return pur-
poses at the beginning of the consolidated return period.   There ap-
pears to be no question about adjustments to inventory during the
consolidated period.

There is hence presented a narrow, technical, and specific problem
involving the interplay of inventory accounting with consolidated

---

[1] Regulations 110.
SEC. 33.39.   Inventories.
(b) *Consolidated Return After Separate Return by Affiliates.* If a corporation which is
a member of the affiliated group for the first consolidated return period was a member of
the group in the preceding taxable year, the value of its opening inventory to be used in
computing the consolidated net income for the first consolidated return period shall be
the proper value of the closing inventory used in computing its net income for the preced-
ing taxable year decreased in the amount of profits or increased in the amount of losses
reflected in such inventory which arose in transactions between members of the affiliated
group and which have not been realized by the group through final transactions with
persons other than members of the group.

returns. Petitioner apparently makes no contention that respondent has not applied to its situation the letter of the applicable regulation.[2] Its position appears to be alternatively that the regulation should be applied discriminately so that only specific situations representing potential failure to reflect income would be covered; or that the regulation is invalid since it goes beyond any necessary protection of the revenue against distortions of income.[3]

We are unable to accept either approach. Assuming that the regulation is valid, we think it must be applied to all taxpayers whether the effect is beneficial or the reverse. It may be, as petitioner argues that the consolidated group as a whole will suffer a detriment as a result of its adventure into consolidated reporting. Unfortunate as that may be, it provides no occasion for a less than uniform application of regulations as specific and detailed as those under consideration.[4]

Nor can we agree that the regulation itself is invalid. It is urged upon us that the condition of a taxpayer's inventory at the end of the first separate return year is of no consequence in its relation to the prior consolidated period.[5] Respondent's explanation for the provision in question is that it assists in preventing intercompany manipulations for tax avoidance comparable to those inhibited by Internal Revenue Code section 45. The field is too complicated and the possible situations too numerous for us to say, as it would be necessary to do, that this phase of the regulation is so unreasonable as to be clearly invalid. Even though as petitioner contends, section 45 might furnish some assistance in accomplishing the result for which the regulations are designed, it is too clear for the effectiveness of this argument, first,

---

[2] Regulations 110.

SEC. 33.39. Inventories.

(c) If a corporation which was a member of an affiliated group in a consolidated return period makes or is required to make a separate return for the succeeding taxable year, the value of its opening inventory to be used in computing its net income for such succeeding taxable year shall be the proper value of its closing inventory used in computing consolidated net income for the last consolidated return period increased in the amount of profits or decreased in the amount of losses eliminated in the computation of such inventory as profits or losses arising in transactions between members of the affiliated group, but in an amount not exceeding, in the case of profits, either the amount of profits arising from such intercompany transactions reflected in the closing inventory of such corporation for such succeeding taxable year or the amount of such intercompany profits eliminated from its opening inventory for its first consolidated return period pursuant to the provisions of subparagraph (2) of this subsection, * * *. [As amended by T. D. 5245, Mar. 13, 1943.]

[3] It complains particularly of the provision that the intercompany profits added to the opening inventory of the first separate return year shall be "in an amount not exceeding * * * the amount of profits arising from such intercompany transactions reflected in the *closing* inventory of such corporation for *such succeeding* taxable year * * *." [Emphasis added.] But it is not easy to see what bearing this provision can have on petitioner's difficulty, since the limitation from which it suffered was the alternative one relating to the intercompany profits eliminated at the inception of consolidated reporting.

[4] *Singer Sewing Machine Co.*, 5 T. C. 851, affd. on Judge Murdock's opinion below (C. A. 3) 158 F. 2d 982, dealt with the predecessor regulation and has no bearing on the construction of the regulations applicable here. Certainly it is no authority for applying the same regulation differently to different taxpayers.

[5] See footnote 3.

that the relationship of section 45 with consolidated returns [6] has been frequently announced, see e. g. *Seminole Flavor Co.*, 4 T. C. 1215, and second, that the limitation on the operation of section 45 is so severe that other means of effectuating the present purpose seem clearly permissible. Cf. *Chelsea Products, Inc.*, 16 T. C. 840, affd. (C. A. 3) 197 F. 2d 620.

Be that as it may, it is the confinement to the amount originally excluded from inventory which really pinches petitioner. The difference between that figure and the amount now claimed, that is, the whole of the intercompany profit in the inventory at the close of consolidated reporting, is necessarily profits of petitioner's affiliates secured during the consolidated period but, due to the consolidation, not taken up as income by them. See *Singer Sewing Machine Co.*, 5 T. C. 851, affd. (C. A. 3) 158 F. 2d 982.

Petitioner's only approach to that really effective restriction [7] is that it should be applied, at least in this instance, not by individual corporations but to the consolidated group.[8] This seems to be the equivalent of resisting its application entirely since it seems obvious that, on a return to separate reporting, each corporation's adjustment of its accounting system must be complete and self-sufficient. See *Bostonian National Shoe Stores, Inc.*, 39 B. T. A. 444. At least it amounts to disregarding the regulation and to employing petitioner's method, not that formulated by respondent.

Consolidated returns are optional. The privilege of employing them is carefully conditioned upon the acceptance by all participating

[6] Internal Revenue Code, section 141 (i).

[7] It is true that the other restriction, but less confining under the present facts, would otherwise come into play as shown by the following table:

| Name of subsidiary | Intercompany profits | | | Permitted restorations, Jan. 1, 1943, excess profits tax |
| --- | --- | --- | --- | --- |
| | Dec. 31, 1943 | End last consolidated year Dec. 31, 1942 | Beginning first consolidated year Jan. 1, 1941 | |
| General Electric Supply Corp | $1,106,992 | $1,149,783 | $1,983,215 | $1,106,992 |
| General Electric X-Ray Corp | 53,120 | 86,922 | 19,440 | 19,440 |
| Locke Insulator Corporation | 760 | 1,091 | 0 | 0 |
| Petitioner | 156,062 | 331,571 | 61,008 | 61,008 |
| The Monowatt Electric Corp | 29,095 | 33,972 | 102,202 | 29,095 |
| Edison General Electric Applicance Co., Inc | 116,952 | 149,725 | 218,145 | 116,952 |
| International General Electric Co., Inc | 152,785 | 290,467 | 30,988 | 30,988 |
| International General Electric S. A., Inc | 191,940 | 148,538 | 0 | 148,538 |
| | $1,807,706 | $2,192,070 | $2,414,998 | $1,513,013 |

[8] "Petitioner's position is that in determining the amount of the restoration of intercompany profits to petitioner's opening inventory, regard must be had to the inventories of the entire affiliated group in order to determine how many of such profits previously have escaped tax. When that amount is ascertained, a full restoration of profits as they existed at the close of the consolidated period is allowable provided the restoration to all members of the group does not exceed the previously taxed profits eliminated at the beginning of the consolidated period." (Petitioner's reply brief.)

taxpayers of the applicable regulations. Section 141, Internal Revenue Code as amended [9] by Revenue Act of 1942, section 159. Because of the technical and complicated nature of the problem, Congress placed in the respondent more than ordinary discretion and imposed upon him a heavier responsibility than usual, see *Bostonian National Shoe Stores, Inc., supra,* 448, to employ his regulatory power in order for the overriding purpose of the legislation to be achieved,[10] while at the same time eliminating any possibility of such distortion of income as to result in inadequate taxation of the taxpayers concerned.[11]

It may well be that respondent cannot by regulation deprive a consolidated group of a privilege conferred upon it by some other statutory provision. See *General Machinery Corporation,* 33 B. T. A. 1215, affd. (C. A. 6) 95 F. 2d 759. But only the adoption and relinquishment of consolidated returns is involved here. And bearing in mind petitioner's agreement to abide by the regulations; that it is but one of a number of separate enterprises included in the consolidation; that the regulations are designed to be of general applicability; and in particular, that the regulation in question has not been shown to be so clearly arbitrary or unreasonable on its face as to be treated as invalid, we conclude that the action originally taken by petitioner and concurred in by respondent was correct and the deficiency properly determined.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

[9] (a) * * * The making of consolidated returns shall be upon the condition that * * * all corporations which at any time during the taxable year have been members of the affiliated group making a consolidated income-tax return consent to all the consolidated income—and excess-profits-tax regulations prescribed under subsection (b) prior to the last day prescribed by law for the filing of such return. The making of a consolidated income-tax return shall be considered as such consent. * * *

[10] "Many difficult and complicated problems, however, have arisen in the administration of the provisions permitting the filing of consolidated returns. It is, obviously, of utmost importance that these questions be answered with certainty and a definite rule be prescribed. Frequently, the particular policy is comparatively immaterial, so long as the rule to be applied is known. The committee believes it to be impracticable to attempt by legislation to prescribe the various detailed and complicated rules necessary to meet the many differing and complicated situations. Accordingly, it has found it necessary to delegate power to the Commissioner to prescribe regulations legislative in character covering them. * * *" [S. Rept. 960, 70th Cong., 1st Sess., p. 15.]

[11] SEC. 141. CONSOLIDATED RETURNS.

(b) REGULATIONS.—The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making consolidated income- and excess-profits-tax returns and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income- and excess-profits-tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability. * * * [I. R. C., sec. 141(b), as amended by Revenue Act of 1942, sec. 159 (a).]